**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: January 10 2007**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 05-76976 |
| | ) | |
| William Glenn Mestemaker and | ) | Chapter 7 |
| Shana Leann Mestemaker, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 727(b)(3) [Doc. # 23], Debtors' response [Doc. # 28] and the UST's supplemental brief [Doc. # 32]. The court has jurisdiction over this case pursuant to 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case unless they convert the case to a Chapter 13.

### BACKGROUND

Debtors filed their Chapter 7 petition on December 21, 2005. Their bankruptcy schedules show unsecured nonpriority debt in the amount of $117,884.93, secured debt relating to four vehicles in the amount of $17,954.93, and minimal, if any, nonexempt assets. Debtors' Schedule I shows total monthly income after payroll taxes and deductions of $3,587.45, which income does not include $158.43 withheld

monthly as a payroll deduction in payment of three 401(k) plan loans. Their Schedule J shows total monthly expenses in the amount of $3,288.00, leaving monthly net income of $299.45.

Because Debtors' petition was filed after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), they are subject to the requirements of amended § 707(b). Section 707(b)(1) provides that the court may dismiss a Chapter 7 case filed by a debtor with primarily consumer debts, or with the debtor's consent, convert the case to one under Chapter 13, if it finds that granting relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1). A presumption of abuse arises if current monthly income is greater than the median family income of the applicable state for a family of the same or fewer number of individuals and such income, reduced by the amounts determined under § 707(b)(2)(A)(ii), (iii) and (iv), and multiplied by 60 is not less than the lesser of --

> (I)   25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i) and (b)(7)(A). The amounts by which current monthly income[1] may be reduced are generally established under the National Standards and Local Standards issued by the Internal Revenue Service for the area in which the debtor resides; however, the debtor is permitted to deduct the actual amount of certain categories of expenses specified as "Other Necessary Expenses." *See id.* 707(b)(2)(A)(ii). In addition, debtors may deduct their average monthly payments on account of secured and priority unsecured debts. *Id.* 707(b)(2)(A)(iii) and (iv). The calculations required under § 707(b)(2) are referred to as "the means test." If a debtor does not "pass" the means test, that is, if the required calculation results in a presumption of abuse, a debtor may rebut the presumption by demonstrating "special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." *Id.* 707(b)(2)(B)(i).

Further, as an alternative to proving abuse through the presumption, § 707(b)(3) provides:

---

[1]  "Current monthly income" is defined as

> (A) . . .the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii).

11 U.S.C. § 101(10A).

2

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--

> (A) whether the debtor filed the petition in bad faith; or

> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

In this case, Debtors' Amended Statement of Current Monthly Income and Means Test Calculation (Official Form B22A) indicates that Debtors' income is above the median family income for a family their size but that a presumption of abuse does not arise since the expenses permitted under § 707(b)(2)(A) are greater than Debtors' current monthly income. Thus, they have "passed" the means test. Nevertheless, the UST argues that abuse may be found under § 707(b)(3) since Debtors' bankruptcy schedules show excess income over expenses that is available to pay a substantial portion of their unsecured nonpriority debt. Specifically, Debtors' Schedules I and J show excess income over expenses in the amount of $299.45. Also, relying on *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429 (6th Cir. 2004), the UST argues that Debtors' 401(k) plan monthly loan repayments should be considered as additional income available for payment to unsecured creditors. Debtors counter, first, that the means test calculation under § 707(b)(2) is conclusive for purposes of determining abuse based on a debtor's ability to pay and, second, that BAPCPA expressly excludes 401(k) plan loan repayments from the disposable income calculation.

## LAW AND ANALYSIS

The parties' arguments require the court to interpret various provisions of the Bankruptcy Code, as amended by BAPCPA. In doing so, the starting point is the language of the statute itself. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). "When the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Id.* (quoting *United States v. Ron Pair Enterprises*, Inc., 489 U.S. 235, 241 (1989)). However, in the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' . . . the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242-43 (1989) (internal citations omitted). Moreover, when the statute's language is not clear, courts may resort to legislative history to ascertain its meaning. *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001). In determining the clarity or ambiguity of statutory language, courts should not read a statute in isolation. "Statutory construction is a 'holistic

3

endeavor.' 'A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme--because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'" *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (internal citations omitted); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). With these concepts in mind, the court turns to the issues raised by the parties' arguments.

**I.      Does the means test calculation under § 707(b)(2) provide the sole test that a court may employ in deciding the existence of abuse based on ability to pay?**

Debtors do not dispute that they have, in reality, excess monthly income over expenses of nearly $300.00. Nevertheless, they argue that the means test calculation is conclusive evidence regarding their ability (or inability) to pay their unsecured creditors. The court disagrees and finds that the plain language of § 707(b) indicates otherwise. Debtors' argument overstates the statutory significance of "passing" the means test.

Section 707(b)(1) provides that the court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts "if it finds that the granting of relief would be an abuse of the provisions of this chapter." Section 707(b)(2)(A)(i) then provides that "the court shall presume abuse exists" if the financial calculations set forth in that subsection show current monthly income, a defined term, reduced only by expenses specifically permitted under § 707(b)(2)(A)(ii), (iii), and (iv), is greater than a specified level, referred to by one commentator as "the abuse threshold." *See* Eugene Wedoff, *Judicial Discretion to Find Abuse under § 707(b)(3)*, 25 Am. Bankr. Inst. J. 1, 50 (April, 2005) ("Wedoff Article"). In other words, the means test calculation results in an amount presumed to be available to pay unsecured creditors and, if that amount is greater than the abuse threshold, abuse is presumed.

However, as the Wedoff Article explains, "the means test is not infallible." *Id.* at 51. "Current monthly income" is determined by averaging the debtor's income from the six months before filing bankruptcy. *See* 11 U.S.C. § 101(10A). A change in the debtor's income, either an increase (*e.g.*, a promotion) or a decrease (*e.g.*, a loss of employment), shortly before filing will result in a six-month average that is either higher or lower than what the debtor actually has available at the time the petition is filed. Likewise, a debtor's actual expenses may differ significantly from those determined under

4

§ 707(b)(2)(A)(ii), (iii) and (iv).  Congress has recognized this reality and has thus provided for rebuttal of the presumption of abuse in cases of actual higher expenses and/or lower income.

Section 707(b)(2)(B) provides the circumstances under which the presumption of abuse may be rebutted.  Not every actual additional expense of a debtor will serve as effective rebuttal of the presumption. A debtor must demonstrate "special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative" and that cause the amount otherwise calculated under the means test to fall below the abuse threshold.  *See* 11 U.S.C. § 707(b)(2)(B)(i) and (iv).  To the extent that a debtor succeeds in rebutting the presumption of abuse, the presumption dissipates and the party moving for dismissal based upon abuse has the burden of showing such abuse independent of the means test calculation.  *See* Fed. R. Evid. 301; Wedoff Article,  at 51.  *But see* Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way*, 13 Am. Bankr. Inst. L. Rev. 665 (Winter 2005) (suggesting that the means test is the exclusive test in determining ability to pay).

In light of the fact that Congress specifically addressed the situation where a debtor has greater expenses and/or lower income than what is accounted for under the means test calculation, it is unreasonable to interpret § 707(b) as not providing for circumstances where a debtor has fewer expenses and/or higher income than what is set forth under the means test.  The plain language of § 707(b)(3) provides for a court to consider that very circumstance.  Specifically, in determining whether granting relief would be an abuse of the provisions of Chapter 7 in a case in which the presumption "does not arise or is rebutted," a court is required to consider whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."  11 U.S.C. § 707(b)(3)(B).  The plain meaning of the phrase "debtor's financial situation" must include a debtor's actual income and expenses, since such information is the starting point for any analysis of an individual's financial situation.  There is no provision in § 707(b) stating that the means test is the only method through which a court may determine whether there is abuse based on a debtor's ability to pay.  Rather, the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted.  *See United States v. Boucha,* 236 F.3d 768, 774 (6th Cir. 2001)(explaining that the language of the statute is not only the starting point for statutory interpretation, it is also "the ending point if the plain meaning of that language is clear"); *cf. In re Pennington*, 348 B.R. 647, 651 (Bankr. D. Del. 2006) (concluding that "the language of section 707(b)(3) is very broad and was meant to give the Court substantial leeway to consider all aspects of the Debtor's financial condition").

5

Because the court finds the statutory language clear, the court does not need to rely on legislative history to assist it in its interpretation of § 707(b). Nevertheless, the court notes that BAPCPA's legislative history supports its conclusion that a debtor's actual debt-paying ability must be considered in determining a motion to dismiss based on ability to pay where the debtor has passed the means test. Motivating factors in enacting BAPCPA's comprehensive consumer bankruptcy reform include Congress's concerns that "the present bankruptcy system has loopholes and incentives that allow and– sometimes – even encourage opportunistic personal filings and abuse" and that current law has "no clear mandate" requiring debtors who are able to repay a significant portion of their debts to do so. H.R. Rep. No. 109-31(I), at 5 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 92.[2] Clearly, Congress intended debtors who actually have the ability to repay a significant portion of their debt to do so. *In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006).

Under this court's interpretation of § 707(b), the expenses permitted to be deducted from a debtor's average monthly income under the means test sets forth the ceiling on expenses that a debtor may claim where that debtor's income is above the median income unless successfully rebutted under § 707(b)(2)(B). Where the presumption of abuse does not arise (e.g. where expenses under § 707(b)(2)(A)(ii), (iii) and (iv) reduce the average monthly income below the abuse threshold) or where the debtor rebuts the presumption, the court must then consider a debtor's actual income and expenses in determining abuse based on ability to pay under § 707(b)(1) and (3).

**II. Does the totality of the circumstances of Debtors' financial situation demonstrate abuse?**

---

[2] Bankruptcy reform legislation had been under consideration by Congress for a number of years before BAPCPA was enacted. The legislative history of an earlier version of legislation that included an amendment to § 707(b) that was substantially the same as enacted in BAPCPA includes a section by section discussion of the amended sections, including the following:

> It is intended that by changing the standard for dismissal from "substantial abuse" to "abuse", stronger controls will be available to the courts, the United States trustee or bankruptcy administrator, private trustees and creditors to limit the abusive use of chapter 7 based on a wide range of circumstances. The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. If a debtor's case would be dismissed today for "substantial abuse" as in *In re Lamanna*, 153 F. 3d 1 (1st Cir. 1998), it is intended that the case should be subject to dismissal. . . .

146 Cong. Rec. S11683-02, *S11703 (Dec. 7, 2000) (Conf. Rep.).

In *Lamanna*, the debtor's monthly income of $1350 exceeded his expenses by $770 per month. The debtor argued, however, that his expenses were artificially low because he was living with his parents. The First Circuit affirmed the bankruptcy court's dismissal of the debtor's petition as a substantial abuse of Chapter 7. The court rejected the debtor's argument, which, as explained by the court, "boils down to the notion that § 707 requires the bankruptcy court to impute a minimum cost of living to a debtor and then measure the debtor's actual income against the higher of the imputed minimum and the debtor's actual expenses."

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Thus, pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3). *See* Wedoff Article, p. 52. The court emphasizes, however, that Congress has clearly lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." Significantly, pre-BAPCPA § 707(b)(1) also contained an express statutory presumption "in favor of granting the relief requested by the debtor." Congress eliminated that presumption in BAPCPA, replacing it with the means test presumption and the lower standard for dismissal.

In this case, the UST does not allege under § 707(b)(3)(A) that Debtors filed their Chapter 7 petition in bad faith. Rather, the UST argues that Debtors have the ability to repay a portion of their debts under a Chapter 13 plan. In *Krohn*, the court considered the totality of the circumstances of the debtor's financial situation, listing several factors relevant to determining whether a debtor is "needy." The first factor, which the court found alone sufficient to warrant dismissal, is the debtor's "ability to repay his debts out of future earnings." *Krohn*, 886 F.2d at 126. The Sixth Circuit explained that "a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease." *Id.* Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan.[3] *See, e.g., In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004); *Price*, 353 F.3d at 1139; *In re Peoples*, 345 B.R. 840, 843 (Bankr. N.D. Ohio

---

[3] The court avoids using the term "disposable income." In pre-BAPCPA cases, courts generally calculated the amount of disposable income, as defined in § 1325(b)(2), to determine whether there would be sufficient disposable income to fund a Chapter 13 plan. *See In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004). That term, however, has been redefined and, as redefined, is not necessarily applicable in this analysis.

2006).

In this case, Debtors are both employed, with one of them employed at the same job for six years. Their Schedule I shows that they have regular income. *See* 11 U.S.C. §§ 101(30) and 109(e). There is no indication that either Debtor faces a loss of employment or anticipates a decrease in income within the next year. Their Statement of Financial Affairs shows an improvement in income over 2002, 2003 and 2004. And their debts are less than the limits for eligibility for relief under Chapter 13. [*See* Doc. #1, Summary of Schedules]; 11 U.S.C. § 109(e). Debtors do not dispute the fact that they have income in excess of their expenses in the amount of almost $300 per month, or $18,000 over 60 months, a period that coincides with the applicable commitment period of a Chapter 13 plan for an above median income debtor. *See* 11 U.S.C. § 1325(b)(4). Their schedules show no unsecured priority debt and $117,884 in general unsecured debt, which would predict a potential dividend to unsecured creditors under a Chapter 13 plan of 10% to 15% if all creditors file claims. Of their general unsecured debt, there is one substantial debt of $101,759 due to the deficiency balance after foreclosure on a mortgage. The filing or absence of filing of a proof of claim by that creditor will materially affect the percentage dividend to unsecured creditors, an outcome that cannot be predicted now. If that claim is not filed, as occurs with surprising frequency, Debtors' other unsecured creditors could be paid 90% to 100% of their claims through Chapter 13.

The Mestemakers' circumstances compare to the Sixth Circuit's affirmance of a <u>substantial</u> abuse dismissal in *Behlke* where the court found that debtors could pay a dividend to general unsecured creditors of 14% over three years or 23% over five years. While courts have so far reached different conclusions regarding what constitutes "disposable income" in a Chapter 13 case and, thus, what amount *must* be applied to make plan payments under § 1325(b)(1)(B), *compare In re Alexander,* 344 B.R. 742 (Bankr. E.D.N.C. 2006) (finding that debtors satisfied § 1325(b) by applying the amount of disposable income calculated under the means test, which amounts were less than the debtors' actual excess income over expenses) and *In re Guzman*, 345 B.R.640 (Bankr. E.D. Wis. 2006) (same), *with In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006) (construing § 1325(b) to permit the court to consider the debtors' actual income and expenses), Debtors are clearly eligible for adjustment of their debts under Chapter 13. If they do choose to seek relief under Chapter 13, they certainly have the ability, even if not required to do so under § 1325(b), to apply their actual excess income to plan payments for the benefit of their unsecured creditors.[4]

Also helpful in determining abuse under § 707(b)(3) is the guidance offered by Congress in § 707(b)(2)(A)(i), which provides, in relevant part, for a presumption of abuse if current monthly income

---

[4]The court is not deciding that issue here.

reduced by allowed expenses, and multiplied by 60 is not less than the lesser of --

> (I)    25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i).   Congress chose a standard for the threshold for abuse under § 707(b)(2) based on the two-pronged approach of analyzing both a percentage of debt and two relatively insubstantial gross dollar amounts.  In concluding that this provision indicates a Congressional policy judgment, the Wedoff Article explains as follows:

> The abuse threshold set out in § 707(b)(2)(A)(i) is irrebuttable.  Section 707(b)(2)(B) only allows a debtor to rebut the means test's calculation of disposable income in an amount above the abuse threshold; it does not allow any argument that the threshold itself is too low. Disposable income of more than $166.66 per month, or disposable income of at least $100 per month, sufficient to pay 25 percent of the debtor's nonpriority unsecured debt in five years, is always an abuse requiring a denial of chapter 7 relief.  Since the abuse threshold cannot be challenged within the means test, there is a clear policy judgment that the threshold fixes the level at which debt-paying ability becomes abusive of chapter 7.  When judges are required to make determinations of abuse under § 707(b)(3), they should accordingly use the means-test threshold: If a debtor's actual disposable income, determined by the court, is below that threshold, there should be no finding of abuse based on debt-paying ability; if disposable income meets or exceeds the threshold, abuse should be found.

Wedoff Article, p. 52; *see Pennington*, 348 B.R. at 651-52 (citing the Wedoff Article and finding abuse under § 707(b)(3) where the debtor's monthly disposable income exceeds the abuse threshold set forth in § 707(b)(2)(A)(i)).  In this case, Debtors' actual ability to pay at least $18,000 exceeds the $10,000 abuse threshold set forth in § 707(b)(2)(A)(i).[5] This court does not necessarily agree that abuse or lack of abuse based on the totality of a debtor's actual financial circumstances under § 707(b)(3) must be determined by application of the "abuse threshold" established for purposes of the  means test construct  in § 707(b)(2). But  the "abuse threshold" is at  least a helpful guideline to Congress's intentions in giving content to the concept of abuse under § 707(b)(1).  The court does not need to determine that question here, as it finds that, based on these facts, granting Debtors relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the totality of their actual financial circumstances even without treating  the "abuse threshold" as determinative  under § 707(b)(3).  The court also does not need to determine whether, as argued by the UST, Debtors' 401(k) plan loan repayments constitute income available

---

[5]  In determining Debtors' actual ability to pay unsecured creditors at least $18,000, the court has relied on their Schedules I and J, which include on Schedule I their 401(k) plan loan repayments and still show approximately $300 of excess monthly income over monthly expenses.

9

for payment to unsecured creditors since the court finds that granting Debtors relief would be an abuse even if the loan repayments are excluded.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's Motion to Dismiss [Doc. # 23] be, and hereby is, conditionally **GRANTED**. Debtors are allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case or the case will be dismissed by separate order of the court.

05-76976-maw    Doc 41    FILED 01/10/07    ENTERED 01/10/07 11:19:41    Page 10 of 10